WALTER J. COLGAN, Ex'r of the Estate of Blanche L. Colgan, Plaintiff-Appellant, v. SISTERS OF ST. JOSEPH OF CARONDELET, Defendant-Appellee.

Third District   No. 3—92—0100

Opinion filed November 13,1992.

Bartley & Bartley, P.C., of Peoria (Joseph F. Bartley III, of counsel), for appellant.

David J. Walvoord and Stephen C. Ferlmann, both of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria (David J. Dubicki, of counsel), and Edward M. Goldenhersh and Lawrence S. Denk, both of Greensfelder, Hemker & Gale, of St. Louis, Missouri, for appellee.

JUSTICE HAASE delivered the opinion of the court:

The defendant, the Sisters of St. Joseph of Carondelet (the Sisters), filed a motion in probate court to compel distribution of $217,417.85 as its distributive share under the will of the decedent, Blanche L. Colgan. Walter J. Colgan, the executor of the decedent's estate, filed a petition for directions, requesting that the court determine the disposition of the balance of the estate. The trial court granted the Sisters' motion to compel distribution and dismissed the executor's petition for directions. The executor appeals.

The record shows that on December 18, 1979, the decedent executed a will. Section 13(c) of that will provided for the following bequest:

"Undivided one-fourth (¼th) to the SISTERS OF ST. JOSEPH OF CARONDELET to provide scholarships for those who attended the Academy of Our Lady of Peoria, Illinois."

On May 19, 1983, the decedent executed a codicil to the 1979 will to correct the legal description of property devised in section 12. The testatrix did not amend the 1979 will in any other way. On June 10, 1987, she died.

At the beginning of the 1974-75 school year, the Academy of Our Lady, an all-girls Catholic high school, merged with Spalding Institute to form a coed Catholic high school named Academy of Our Lady/Spalding Institute. At the time of the decedent's death, the school was operated by the Sisters. The Sisters continued to operate the school until June 1, 1988, at which time the school merged with Bergan High School to form Peoria Notre Dame High School.

On December 19, 1988, the executor made a partial distribution of $37,500 to the Sisters under section 13(c) of the will. On January 12, 1990, the executor filed an interim report showing the $37,500 distribu-

tion to the Sisters. The executor gave notice of a hearing on the report to all beneficiaries under the will, which included the Bishop of the Roman Catholic Diocese of Peoria. No objections were filed to that report and an order was subsequently entered approving it.

On January 9, 1990, the executor made a second partial distribution under the will to the Sisters for $25,000. On June 29, 1990, the executor filed a final report listing the second distribution to the Sisters. The report requested that the balance of the section 13(c) bequest be paid to the Sisters, that the final report be approved, and that the executor be discharged. The notice of the final report was sent to all interested parties, including the Bishop. On July 17, 1990, the executor, at the request of the Catholic Diocese of Peoria (Diocese), filed a petition for directions requesting that the court determine the appropriate disposition of the final balance of the section 13(c) bequest. In his petition, the executor stated that the Diocese contended that the Sisters should not receive the bequest since they no longer operated a school in Peoria.

In response to the petition, the Sisters filed a motion to dismiss and a motion to compel the distribution of the balance of the bequest. Thereafter, a hearing was held on the Sisters' motions. The executor took a neutral position at the hearing. The Diocese, however, argued that the section 13(c) bequest should not be distributed to the Sisters, but rather, to the Diocese to fund scholarships at Peoria Notre Dame High School. The Sisters countered by arguing that the bequest had vested at the time of the decedent's death, and since it was operating Academy of Our Lady/Spalding Institute at that time, it was entitled to the bequest.

The probate court entered an order dismissing the executor's petition and granting the Sisters' motion to compel distribution. The executor filed a notice of appeal from that decision.

At the outset, the Sisters argue that an executor has no authority to appeal from an order of distribution.

■ We disagree. The Illinois cases cited by the Sisters in support of their position actually hold that an executor has no right to appeal from an order granting or denying a partial distribution. (See *In re Estate of Burke* (1990), 203 Ill. App. 3d 319, 561 N.E.2d 220; *In re Estate of Tingos* (1979), 72 Ill. App. 3d 703, 390 N.E.2d 1349.) Here, partial distributions had been made of $25,000 and $37,000. The distribution involved in this appeal was a distribution of the balance of the bequest and was therefore a final distribution. Accordingly, we find that the executor had standing to bring the appeal.

Turning to the merits, we note that the executor argues on appeal that the language in the will stating, "to the Sisters *** to provide scholarships for those who attended the Academy of Our Lady, Peoria,

Illinois," created a condition subsequent. Therefore, he argues, title to the property passing under the will is subject to divestiture on failure to perform the condition.

In response, the Sisters argue that a condition subsequent was not created by section 13(c) of the will and that their interest under the will vested on the date of the testator's death.

■ A condition subsequent in a deed gives the grantor or his estate, either by express words or necessary implication, the right to reenter and repossess the premises on violation of the condition and affects an estate already granted. (*Dunne v. Minsor* (1924), 312 Ill. 333, 143 N.E. 842.) A court's primary goal in construing a will is to determine the testator's intent. (*Chicago Title & Trust Co. v. Schwartz* (1983), 120 Ill. App. 3d 324, 458 N.E.2d 151.) Conditions subsequent defeating estates are not favored, and courts will not construe a condition subsequent so as to defeat the vesting of an estate under a will, contrary to a general intention of the testator, as may be determined from the instrument itself. (*Wheeler v. Williams* (1948), 400 Ill. 438, 81 N.E.2d 175.) A court is not at liberty under the guise of construing a will to create a wholly new gift where no provision was made for a contingency which has occurred or where in view of subsequent events it appears that a particular provision would probably have been made if the testator had thought of it. *Chicago Title & Trust Co. v. Schwartz* (1983), 120 Ill. App. 3d 324, 458 N.E.2d 151.

There are two factors generally recognized in Illinois cases as indicative of a testator's intention to create a condition subsequent: first, whether the clause in the will contains words constituting a condition, such as "on condition," "so that," "provided, however," "but if," and the like (*Wheeler v. Williams* (1948), 400 Ill. 438, 81 N.E.2d 175); and second, whether the will contains a clause giving the grantor's heirs the right to reenter the premises or declare a forfeiture of the estate for breach of the condition (*Maguire v. City of Macomb* (1920), 293 Ill. 441, 127 N.E.2d 682; *Dunne v. Minsor* (1924), 312 Ill. 333, 143 N.E. 842). The fact that a clause in a will merely states the purpose for which a bequest is made or defines or explains the use to which it is to be applied is not ordinarily regarded as creating a condition subsequent subjecting the estate to divestiture in case of a breach of such condition. *Wheeler v. Williams* (1948), 400 Ill. 438, 81 N.E.2d 175; *Dunne v. Minsor* (1924), 312 Ill. 333, 143 N.E. 842.

■ Applying the above-mentioned principles, we do not find that a condition subsequent was created here. The testatrix gave an outright gift to the Sisters, and the language in the will stating "to provide scholarships for those who attend the Academy" was merely explanatory of

the testatrix's reason for bequeathing one-fourth of her residual estate to the Sisters. The clause bequeathing the estate to the Sisters does not contain any of the customary words of limitation and does not state any contingency in the event the Sisters failed to operate Academy of Our Lady School in Peoria, Illinois. Furthermore, the will does not provide for a forfeiture or reentry if the bequest was not used for scholarships.

The present case is similar to *Wheeler v. Williams* (1948), 400 Ill. 438, 81 N.E.2d 175. There, it was argued that a condition subsequent was created by a clause in a will. The will devised the testatrix's residence to her daughter and her three sons "in consideration, that she will have the smaller farm, owned by her father, and myself, and her brother *** shall have the [homestead], with the forty acres adjoining." (400 Ill. at 440.) The court construed the quoted language as merely explanatory as to the testatrix's reason for devising the entire residence to the daughter, and not as a condition subsequent pursuant to which the daughter's estate under the will could be divested. Given the absence of a divestiture clause or any other language indicating a condition subsequent, we find that the rationale set forth in *Wheeler* is controlling here.

■ We further note that generally, a will becomes effective on the date of the testator's death. (*Lloyd v. Treasurer of the State* (1948), 401 Ill. 520.) The law favors the vesting of estates at the earliest opportunity. (*Chicago Title & Trust Co. v. Shellaberger* (1948), 399 Ill. 320, 77 N.E.2d 675; *In re Estate of Knight* (1989), 178 Ill. App. 3d 777, 533 N.E.2d 949.) Thus, estates will vest on the testator's death unless a later time for their vesting is apparent from the express provisions of the will. *In re Estate of Knight* (1989), 178 Ill. App. 3d 777, 533 N.E.2d 949.

In the present case, the Sisters were operating a school in Peoria, Illinois, on the date of the testatrix's death and continued to operate that school for approximately a year thereafter. Under these facts, we conclude that on the date of the testatrix's death, the estate vested in the Sisters.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

GORMAN and STOUDER, JJ., concur.