(No. 31918.

FANNIE VIOLA HUNT, Appellant, *vs.* ELEANORA MITCHELL *et al.,* Appellees.

*Opinion filed May 24, 1951.*

Newlin & Fraser, of Peoria, for appellant.

Kavanaugh & Lindsay, of Peoria, for appellees.

Mr. Justice Gunn delivered the opinion of the court:

William L. Mitchell died testate November 18, 1944. He executed his last will and testament May 21, 1934. The will was probated in Peoria County. After making provision for the payment of his debts, by the second clause of the will he bequeathed to his daughter, Fannie Viola Hunt, "The East part" of a certain described parcel of property, "to have and to hold the same for and during her natural life." By the third clause of his will he, in like manner, devised the remaining part of the same parcel of land to his son, Charles Estis Mitchell, "to have and to hold the same for and during the natural life of said Charles Estis Mitchell." By the fourth clause of his will he provided that a well located on the dividing line between the two tracts of land given to his son and daughter "shall be used jointly by the devisees and beneficiaries named in this will." The fifth clause of the will is as follows:

"Upon the death of my said two children, or either of them, I will, devise and bequeath the said real estate hereinbefore devised to my said two children, unto my grandchildren, being the children of my said daughter, Fannie Viola Hunt, and Charles Estis Mitchell, living at the time of the death of the survivor of my said two children, the same to be the property of said grandchildren, in fee simple and forever." The balance of the will consists of a residuary gift to the two children, and their appointment as joint executors.

The son, Charles Estis Mitchell, died in 1946, survived by two daughters, Jeanette Marie Leritz and Margaret Ann

Pitchford, and his widow, Eleanora Mitchell. The plaintiff, Fannie Viola Hunt, has no children. She filed a complaint in the circuit court of Peoria County for a declaratory judgment or decree that she is entitled to an undivided one-half interest in the entire property, or, in the alternative, that she take by way of an implied cross remainder a life estate in the whole of said real estate, including the part devised to her brother, Charles Estis Mitchell, and for an accounting and possession of the property.

The defendants, being the surviving widow and the two children, and their husbands, deny that the plaintiff has any interest whatsoever in the property devised to Charles Estis Mitchell for life, with the remainder to the testator's grandchildren. The cause was referred to a master in chancery, who recommended a decree that the plaintiff have and take no interest in the part of the premises devised to Charles Estis Mitchell for life, by way of cross remainder, and the court approved this report and entered a decree dismissing the complaint.

Although the briefs argue the question whether the remainders devised to the grandchildren were contingent or were vested, subject to being opened up, we will before considering this point decide first the question of whether cross remainders are limited to the surviving brother or sister in the property of the one first dying, since the will does not specifically create a cross remainder, and it must exist, if at all, by implication. If there is no cross remainder either by express provision or by implication, no occasion exists to require us to decide the character of the remainders created by the will.

In order to acquire a better perspective it is necessary to inquire into the nature of cross remainders. In *Addicks* v. *Addicks,* 266 Ill. 349, they are defined as follows: "Cross-remainders may be defined as remainders limited after particular estates to two or more persons in several parcels of land, or in several undivided shares in the same

parcel of land, in such way that on the determination of the particular estates in any of the several parcels of undivided shares they remain over to the other grantees, and the reversioner or ulterior remainder-man is not let in till the determination of all the particular estates."

In *Whittaker* v. *Porter,* 321 Ill. 368, substantially the same definition is given, and to the same effect also are most of the standard works upon real estate. (1 Tiffany on Real Property, sec. 143; 1 Preston on Estates, p. 94; 2 Washburn on Real Property, 3rd ed., p. 516.) A cross remainder may be created by implication, but such a remainder will be implied only where the intention of the testator, as shown by a consideration of all of the terms of the will, requires it. (*Whittaker* v. *Porter,* 321 Ill. 368.) The basis of the creation of a cross remainder by implication is the intent of the testator, and it is said in many cases that implication is but another name for intention. (*Brewster* v. *Lanyon Zinc Co.* 140 Fed. 801; *Brimmer* v. *Union Oil Co.* 81 Fed. 2d 437, 105 A.L.R. 454; *Jennings* v. *Southern Carbon Co.* 73 W. Va. 215, 80 S.E. 368.) Both the *Addicks* and the *Whittaker cases* follow *Lombard* v. *Witbeck,* 173 Ill. 396, in adopting Jarman's test of ascertaining intention, as follows: "You must ascertain whether the testator intended the whole estate to go over together. If you once found that to be intended, you were not to let a fraction of it descend to the heir-at-law in the meantime. You were to assume that' what was to go over together, being the entire estate, was to remain subject to the prior limitations until the period when it was to go over arrived."

While the intention or implication to create a cross remainder may be allowed in the case of wills, but not in the case of a deed, (Tiffany on Real Property, 2d ed., sec. 143; Cheshire's Modern Real Property, p. 560,) yet, such an implication may not be merely surmised or arrived at by conjecture. In *Connor* v. *Gardner,* 230 Ill. 258, we

said: "A devise by implication cannot rest upon conjecture, but it is not required that the inference should be absolutely irresistible. It is enough if the whole circumstances, taken together, afford such an inference as leaves no doubt in the mind of the judge who has to decide, as to the intention of the testator. [Citations.] To uphold a legacy by implication, the inference, from the will, of the testator's intention must be such as to leave no hesitation in the mind of the court and permit of no other reasonable inference. [Citations.]" Moreover, such implication must be found in some expression of the will. *Pontius* v. *Conrad,* 317 Ill. 241; *Martin* v. *Martin,* 273 Ill. 595.

In our opinion there is no intention expressed in the will to give the surviving child of the testator an interest in the property devised to the deceased child. Each child, by separate clauses in the will, was given a life estate in a specifically described parcel of property. The life estate was not devised to them as tenants in common in one clause, but in separate clauses, describing different property, and each child was specifically limited to a life estate in that property. Clause 5, set out above, leaves a remainder to his grandchildren, "being the children of my said daughter, Fannie Viola Hunt, and Charles Estis Mitchell." Fannie had no children, and, being fifty-six years old, it is unlikely she ever will have children. The property was to go to the grandchildren "Upon the death of my said two children, *or either of them,*" etc., and was to become theirs "in fee simple" on the death of the survivor of the two children of the testator.

Literally, though inartificially, the testator said when either child dies the grandchildren take, and necessarily such grandchildren could only take the property vacated by the death of the life tenant. The testator further said all of the property was to go to the grandchildren living at the time of the death of my children, which would not entitle a grandchild to defeat the share of a living child,

enjoying a life estate, until such life tenant died, but the full enjoyment of the grandchildren's devise would come at the death of both children.

The will is ambiguous in that it makes a devise upon the death of either life tenant to grandchildren, and also specifies that the grandchildren who take must be those who survive the death of both life tenants. A construction of the will which would vest the title in the grandchildren living at the time of the death of the son, Charles Estis Mitchell, in the property devised to Charles Estis Mitchell for life, would not do violence to this will, for taking fee-simple title to both tracts by the grandchildren would be postponed until the death of both life tenants, and the final taker in each tract would be determined at that time. Clause 4 supports such a contruction, for it provides for the joint use of a well on the division line "by the devisees and beneficiaries named in this will," which is an indication that he anticipated the grandchildren might use this provision to secure their enjoyment of a moiety of the property when such a provision would be unnecessary and useless had he intended a cross limitation in the use of the property to the survivor of them.

While the will is ambiguous, it is also clear that there is more in the will to indicate that the testator intended the grandchildren should receive an interest immediately following the death of each of his children, than that he intended a surviving child should have the use of all of the property for life. It, in fact, would do violence to the testator's apparent affection for his grandchildren to oust them from the home their parent occupied, by implication, and turn the possession over to the surviving child, without any proof or indication in the will that such was the intention of the testator.

Since the word "implication" is but another word for "intention," as pointed out above, it certainly cannot be said there is a gift by implication to the plaintiff when

there is also an equal or stronger implication in favor of the remainderman. Counsel have argued the question whether the will created a contingent remainder or a vested remainder to be lessened or increased in the grandchildren. We have determined there is no cross remainder by implication or otherwise in the plaintiff, and therefore no right of possession, and for that reason we conclude that we should construe clause 5 of the will as though the word "survivor," found in the portion thereof reading "living at the time of the death of the survivor of my said two children," was the word "either," to conform to the word "either" in the first part of clause 5, providing the remainder should go to the grandchildren "upon the death of my said two children, or either of them," etc. This construction makes the will clear, and, we believe, conforms to the intention of the testator, gathered from a reading of the entire will.

The power of a court of equity to enforce the intention of a testator or grantor by making the words of a will or deed conform to his intention, as disclosed in the instrument, is well settled. (*Henry* v. *Metz,* 382 Ill. 297; *Cahill* v. *Michael,* 381 Ill. 395.) In the *Cahill case* we said: "In construing a will the courts have not only stricken words from a will, but have inserted or transposed words in order to arrive at the true intention of the testator." While in the *Metz case,* which involved a deed, we said: "In ascertaining and giving effect to the intent of the parties to a deed, the courts are not confined to a strict and literal construction of the language used, when to do so would frustrate the intent of the parties."

It is true that the circuit court dismissed the complaint of the plaintiff, assigning different reasons than ours therefor, but where the result decreed is correct, we do not reverse the decree because we do not agree with the reasons given by the court for entering it. While the basis of the decree of the circuit court was that the grand-

children were given a fee, subject to being lessened or increased, we are unable to see how this would entitle the grandchildren, for this reason alone, to possession of the property. Under the rule applying in such a case, they would be seized in right but not in possession, (*Whittaker* v. *Porter,* 321 Ill. 368,) which would not aid them in the present case. We prefer to base our opinion upon what we believe is the real intention of the testator, and make the language of the will conform to it.

The decree of the circuit court of Peoria County is affirmed.

*Decree affirmed.*